IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

UNITED STATES OF AMERICA          )
                                  )
     v.                           )          CV NO. 2:02cv638-T
                                  )                WO
CLINT GRIFFIN                     )

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  INTRODUCTION AND PROCEDURAL HISTORY**

This matter is before the court on a motion under 28 U.S.C. § 2255 to vacate, set

aside, or correct the sentence of Clint Griffin ("Griffin").

On March 24, 1999, Griffin was charged along with Calvin Massey, Andre

Washington, Marvin Richards, Patrick Howard, and Robin Conner in a multi-count

indictment alleging various controlled substance offenses, including conspiracy to

distribute cocaine and cocaine base and substantive counts of distribution.  Massey and

Washington each pleaded guilty to a single count in the indictment and agreed to assist

the government.   The charges against Richards were dismissed pursuant to a plea

agreement in another case.   Griffin, Howard, and Conner entered pleas of not guilty and

were tried together in a jury trial that commenced on June 14, 1999.   On June 17, 1999, the

jury found Griffin guilty of conspiracy to possess with intent to distribute cocaine and

cocaine base, distribution of cocaine base, and distribution of cocaine.[1]   *See* 21 U.S.C. §§

841(a)(1) and 846.   Griffin was sentenced to terms of 151 months' imprisonment on each

count, to be served concurrently.   He appealed, and on June 18, 2001, the Eleventh Circuit

affirmed his convictions and sentence.[2]   *See United States v. Howard*, 264 F.3d 1144 (11th

Cir. 2001) (unpublished opinion, No. 99-13258).

On May 15, 2002, Griffin filed this motion for relief under 28 U.S.C. § 2255.[3]

Although Griffin concedes procedural default as to the substantive claims presented in his

motion, he asserts ineffective assistance of trial and appellate counsel as cause to excuse

his default in failing to raise those claims at trial or on direct appeal.   *See United States v.*

*Frady*, 456 U.S. 152, 166 (1982); *Bousley v. United States*, 523 U.S. 614, 621-22 (1998)

(ineffective assistance of counsel can constitute cause excusing a procedural default, so

---

[1]Howard was found guilty of the same charges. Conner was found guilty on the conspiracy count and was acquitted as to a substantive count of distribution.

[2]On appeal, Griffin argued that (i) the prosecutor's reference to the O.J. Simpson trial during closing arguments resulted in prosecutorial misconduct warranting a mistrial and (ii) the district court abused its discretion in denying his request for severance or new trial and allowing evidence of a non-testifying codefendant's statement, which directly implicated him in criminal conduct, in violation of his Sixth Amendment Confrontation Clause rights under *Bruton v. United States*, 391 U.S. 123 (1968).

[3]Although Griffin's motion and attached pleadings were stamped "filed" in this court on June 3, 2002, under the "mailbox rule," the court deems his motion filed on the date he delivered it to prison authorities for mailing – presumptively, May 15, 2002, the day that he signed it.   *See Houston v. Lack*, 487 U.S. 266, 271-72 (1988); *Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001).

that a petitioner may obtain review of a defaulted claim).[4]  Thus, all of the claims in Griffin's

motion are couched as claims that he was denied effective assistance of trial and appellate

counsel.  Griffin's claims of ineffective assistance of counsel are as follows:

1.     Trial counsel rendered ineffective assistance due to an actual
conflict of interest, and further, appellate counsel rendered
ineffective assistance by failing to raise an issue on appeal
regarding trial counsel's conflict of interest.

2.     Trial and appellate counsel were ineffective for failing to
challenge the jury selection process in his case in the same
manner as was successfully argued by the counsel in *United
States v. Clay*, 159 F.Supp.2d 1357 (M.D. Ala. 2001).

3.     Trial and appellate counsel were ineffective for failing to
challenge the admission of hearsay statements at trial and for
failing to challenge the Probation Office's consideration of the
hearsay statements in preparing the Presentence Investigation
Report.

4.     Trial and appellate counsel were ineffective for failing to object
to the inclusion of an unadjudicated state disposition in the
calculation of his Sentencing Guidelines criminal history.

5.     Trial and appellate counsel were ineffective for failing to
challenge the drug quantity that the trial court attributed to
him for purposes of determining his base offense level.

The government has responded to Griffin's motion, asserting that his claims are

without merit and entitle him to no relief.  Griffin was afforded an opportunity to respond

---

[4]Griffin also asserts his "actual innocence" as grounds for excusing his procedural default.
*See "Defendant's Counter Response"* (Doc. 43) at 47.  However, he presents no facts or argument
in support of his assertion of actual innocence.

to the government's submissions, and has done so. After careful consideration of the §
2255 motion, the other pleadings, and the record in this case, the court concludes that an
evidentiary hearing is not required and that, pursuant to Rule 8(a), *Rules Governing*
*Section 2255 Proceedings in the United States District Courts*, the motion should be
denied.

## II. DISCUSSION

### A.      Standard of Review for Ineffective Assistance of Counsel

The Sixth Amendment right to counsel exists to protect the fundamental right to a
fair trial. To prevail on a claim of ineffective assistance of counsel, a movant must satisfy
both prongs of the test articulated by the United States Supreme Court in *Strickland v.*
*Washington*, 466 U.S. 668 (1984). The performance prong requires a movant to establish
that counsel performed outside the wide range of reasonable professional assistance and
made errors so serious that he failed to function as the kind of counsel guaranteed by the
Sixth Amendment. *Id.* at 687-89. The prejudice prong requires a movant to demonstrate
that seriously deficient performance of his counsel prejudiced the defense. *Id.* at 687.

There is a strong presumption that counsel's performance was reasonable and
adequate, and great deference is shown to choices dictated by reasonable trial strategy.
*Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994); *see Strickland*, 466 U.S. at 689. Review of
an ineffective assistance of counsel claim is conducted from the perspective of defense

4

counsel, based on facts "as they were known to counsel *at the time of the representation*." *United States v. Teague*, 953 F.2d 1525, 1535 (11th Cir. 1992) (emphasis in original); *see Strickland*, 466 U.S. at 689-90.

The prejudice component of the *Strickland* test focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *See Strickland*, 466 U.S. at 687. To establish prejudice, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

Unless a movant satisfies both prongs of the *Strickland* inquiry, relief should be denied. *Strickland*, 466 U.S. at 687. Accordingly, a court need not "address both components of the inquiry if the [movant] makes an insufficient showing on one." *Id.* at 697. *See, e.g., Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998) ("if a defendant cannot satisfy the prejudice prong, the court need not address the performance prong").

A criminal defendant's right to effective assistance of counsel continues through direct appeal. *See Evitts v. Lucey*, 469 U.S. 387, 396 (1985). Ineffective assistance of appellate counsel may be shown if the movant can "establish ... that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker.... Generally, only when ignored issues are clearly stronger than those presented,

5

will the presumption of effective assistance of counsel be overcome." *Mayo v. Henderson*, 13 F.3d 528, 533 (2nd Cir. 1994).

## B.    Ineffective Assistance of Counsel Claims

### 1.    Counsel's Conflict of Interest

Griffin contends that he was denied effective assistance of counsel at trial because of an actual conflict of interest on the part of his trial counsel, Charles M. Law. *See Memorandum in Support of § 2255 Motion* (Doc. 2) at 8-18. Law represented Griffin's co-conspirator and cooperating government witness Calvin Massey in 1991 in connection with Massey's appeal from a state manslaughter conviction. Griffin characterizes Massey as the government's "star witness" against him at his trial. *Id.* at 13. He maintains that Law's prior representation of and continuing duty of confidentiality to Massey constrained Law from vigorously cross-examining Massey or attempting to impeach Massey with evidence of his previous convictions and other unlawful conduct. According to Griffin, Law's failure to cross-examine Massey sufficiently due to his conflict of interest deprived him of effective assistance of counsel at trial. Griffin also contends that his appellate counsel, John Gorman Morrison II, rendered him ineffective assistance by failing to raise an issue on appeal regarding Law's conflict of interest.[5] *See Memorandum in*

---

[5]Law initially represented Griffin on appeal and filed an appellate brief on his behalf.
(continued...)

*Support of § 2255 Motion* (Doc. 2) at 22-27.

In an affidavit addressing Griffin's conflict-of-interest claim, Law states that "at sometime during [Griffin's] trial," he recognized Massey "as someone he may have represented on a state appeal years earlier."[6]  *See Affidavit of Charles M. Law* (Doc. 26) at 1.  According to Law, when he then notified Griffin of the potential conflict, Griffin "acquiesced" in his continued representation, agreeing that Law's "previous knowledge of Massey as a drug dealer and his previous conviction would help [Griffin] impeach this witness."  *Id.*  For his part, Griffin maintains that Law "never advised or informed [him] that he knew, represented, or had any affiliations" with Massey.  According to Griffin, had Law informed him of his prior representation of Massey, he would have insisted on different representation.  *See Griffin's "Counter Response" and Second Affidavit in Opposition* (Doc. 37) at 2.

In order to prevail on an ineffective assistance of counsel claim based on an alleged actual conflict of interest, a defendant must "establish that an actual conflict of interest adversely affected his lawyer's performance."  *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980);

_____

[5](...continued)
However, after the brief was filed, Griffin discharged Law as counsel, and Morrison was appointed to represent Griffin on appeal.  Morrison was allowed to file a supplemental appellate brief for Griffin.

[6]That case is reported as *Massey v. State*, 587 So.2d 448 (Ala. Crim. App. 1991).

*see also Smith v. White*, 815 F.2d 1401, 1405 (11th Cir. 1987).

> An "actual conflict" of interest occurs when a lawyer has "inconsistent interests." *Smith* [*v. White*], 815 F.2d [1401] at 1405 [(11th Cir. 1987)]. In order to prove that an "actual conflict" hindered petitioner's lawyer's performance, petitioner "must make a factual showing of inconsistent interests" or point to "specific instances in the record" to suggest an actual impairment of his or her interests. *Smith*, 815 F.2d at 1404.

*Freund v. Butterworth*, 165 F.3d 839, 859 (11th Cir. 1999) (citation omitted). This standard

requires petitioner to make a factual showing of inconsistent interests and

> "demonstrate that the attorney made a choice between possible alternative courses of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other." *Smith v. White*, 815 F.2d 1401, 1405 (11th Cir. 1987). Absent such a demonstration, the conflict remains hypothetical and cannot form the basis for relief.

*Porter v. Singletary*, 14 F.3d 554, 560-61 (11th Cir. 1994) (citation omitted).

In *Freund*, *supra*, the Eleventh Circuit noted:

> "[G]enerally, it is more difficult to prove that successive representation caused an actual conflict of interest than that simultaneous representation did so." *Smith*, 815 F.2d at 1405. At minimum, petitioner must "show that either (1) counsel's earlier representation of the witness was substantially and particularly related to counsel's later representation of [petitioner], *or* (2) counsel actually learned particular confidential information during the prior representation of the witness that was relevant to [petitioner's] later case." *Smith*, 815 F.2d at 1405 (emphasis added). Even proof of both substantial relatedness and confidential information, however, may not necessarily be enough to demonstrate "inconsistent interests" in a successive representation case. *See Smith*, 815 F.2d at 1406. The situation may call for "other proof of inconsistent interests." 815 F.2d at 1406. Overall, the "actual conflict" inquiry is fact-specific, consistent with the petitioner's ultimate burden "to prove that his conviction was unconstitutional." *Smith*, 815 F.2d

at 1406.

165 F.3d at 859 (footnote omitted).

Because Law was called upon to cross-examine a former client at Griffin's trial, Griffin has articulated at least a potential conflict of interest. *See Porter*, *supra*, 14 F.3d at 561 ("An attorney who cross-examines a former client inherently encounters divided loyalties."). However, Griffin's conclusory allegations are inadequate to sustain his burden of presenting facts that, if true, demonstrate the existence of an *actual* conflict of interest. Law's representation of Massey some eight years prior to Griffin's trial was wholly unrelated to his later representation of Griffin. Griffin fails to suggest any particular information that was relevant to Griffin's case but was not elicited by Law due to a continuing duty to Massey. Moreover, Griffin's assertion that Law failed to cross-examine Massey vigorously is not supported by the record. The trial transcript shows that Law – like counsel for Griffin's co-defendants, who preceded Law in cross-examining Massey – effectively impeached Massey with evidence of his previous convictions and other unlawful conduct, including the fact that Massey had violated the terms of his state probation by dealing narcotics while on probation. In addition, during his closing argument, Law forcefully argued to the jury that Massey was someone whose testimony was not to be believed based on his criminality and the fact that his testimony was given in exchange for leniency by the government. Thus, the record refutes Griffin's assertion

that Law was not sufficiently vigorous in attacking Massey's credibility.

Griffin can point to no specific instance in which Law acted in a manner prejudicial to his interests, and the court's review of the record reveals that Law instead acted zealously on Griffin's behalf at all stages of the proceedings. Griffin's vague and unsupported allegations are insufficient to demonstrate the existence of an actual conflict of interest, nor do they establish any adverse effect that the alleged conflict had on Law's performance. *See Smith*, *supra*, 815 F.3d at 1405-06. Consequently, Griffin is entitled to no relief based on his claim that he was denied effective assistance of counsel at trial because of an actual conflict of interest on the part of Law.

Furthermore, because Griffin has failed to support his claim regarding trial counsel's conflict of interest, he is likewise entitled to no relief based on his claim that his appellate counsel rendered ineffective assistance by failing to raise the issue on appeal. Counsel cannot be ineffective for failing to present a claim that lacks merit. *See Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001)); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992).

2.      ***Failure to Challenge the Jury Selection Process***

Griffin contends that his trial and appellate counsel were ineffective for failing to challenge the jury selection process in his case in the same manner as was successfully argued by counsel in *United States v. Clay*, 159 F.Supp.2d 1357 (M.D. Ala. 2001). *See Memorandum in Support of § 2255 Motion* (Doc. 2) at 48-75. In *Clay*, this court found

10

that its process of selecting jurors in the Middle District of Alabama – and the court's method of granting temporary deferment to potential jurors who claimed that jury service would be unduly harsh and inconvenient because of personal, family, or work-related obligations – violated the Jury Selection and Service Act ("JSSA"), 28 U.S.C.A. §§ 1861-71, because the process provided an opportunity to exclude a cognizable group of eligible jurors from petit juries and regularly resulted in the under-representation of African-Americans on juror pools in the district.[7]  *Clay*, 159 F.Supp.2d at 1369-70.

The jury selection process used in the Middle District when Griffin was tried was the same process found to be deficient in *Clay*.  However, at the time of Griffin's trial, there had been no finding that the jury selection process violated the JSSA.   Although trial counsel in *Clay* filed a motion objecting to the Middle District's jury selection process on February 24, 2000, the manner of selecting jurors in the Middle District was not determined to be unlawful by the court until September 7, 2001, when the District Court entered an order adopting the Magistrate Judge's February 5, 2001 recommendation that Clay's motion for a new trial should be granted based on the existence of a violation of the JSSA. Griffin's jury was selected and empaneled on June 14, 1999 – over nineteen months before entry of the Magistrate Judge's recommendation in *Clay* and over twenty-six months

----

[7]The JSSA provides that "all litigants in Federal courts entitled to a trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes." 28 U.S.C.A. § 1861.

before the District Court published its opinion adopting that recommendation.

It is well settled that an attorney's failure to anticipate a change in the law does not constitute ineffective assistance of counsel. *See, e.g., United States v. Ardley*, 273 F.3d 991, 992 (11th Cir. 2001) (Carnes, J., concurring) (on petition for rehearing *en banc*); *Spaziano v. Singletary*, 36 F.3d 1028, 1039 (11th Cir. 1994); *Davis v. Singletary*, 119 F.3d 1471, 1476 (11th Cir. 1997); *Pitts v. Cook*, 923 F.2d 1568, 1572-74 (11th Cir. 1991); *Thompson v. Wainwright*, 787 F.2d 1447, 1459 n.8 (11th Cir. 1986). This "rule applies even if the claim based upon anticipated changes in the law was reasonably available at the time counsel failed to raise it." *Ardley*, 273 F.3d at 993, citing *Pitts*, 923 F.2d at 1572-74 (holding that even though a claim based upon the 1986 *Batson* decision was reasonably available to counsel at the time of the 1985 trial, failure to anticipate the *Batson* decision and raise that claim was not ineffective assistance of counsel).

Griffin's trial counsel cannot be faulted for failing to anticipate the decision in *Clay*. Consequently, Griffin has not established that trial counsel's failure to challenge the jury selection process in his case on the grounds argued in *Clay* fell below an objective standard of reasonableness, and trial counsel was not ineffective for failing to raise such a claim. *See Strickland*, *supra*, 466 U.S. at 688.

Nor was Griffin's appellate counsel ineffective for failing to raise such a claim. Griffin's original counsel on appeal filed his brief on November 8, 1999. After Griffin's

original appellate counsel was discharged and new counsel was appointed, his new counsel filed a supplemental brief on or around December 12, 2000. The Eleventh Circuit's judgment affirming Griffin's convictions and sentence was entered on June 18, 2001. *See United States v. Howard*, 264 F.3d 1144 (11th Cir. 2001) (unpublished opinion, No. 99-13258). Thus, Griffin's conviction was final before the District Court entered its order adopting the Magistrate Judge's recommendation in *Clay*. Appellate counsel's failure to challenge Griffin's jury selection process did not fall below an objective standard of reasonableness, *Strickland*, 466 U.S. at 688, and Griffin is not entitled to any relief based on this claim.

### 3.   *Failure to Challenge Admission of Hearsay Statements*

Griffin contends that his trial and appellate counsel were ineffective for failing to challenge the admission of hearsay statements by Calvin Massey. *See Memorandum in Support of § 2255 Motion* (Doc. 2) at 32-43. In those statements, which Massey made to a DEA agent following his arrest, Massey indicated that he had purchased approximately nine ounces of cocaine on at least fifteen different occasions from Griffin and his codefendant Patrick Howard. Those statements were recorded in a written report prepared by the DEA agent and were referred to at trial by Howard's counsel during cross-examination of Massey. Griffin argues that Massey's out-of-court statements constituted inadmissable hearsay and that their introduction at trial was highly prejudicial because it increased the likelihood that the jury would find he had participated in a conspiracy to

13

distribute drugs.

Although not entirely clear from the record, it appears that the intention of Howard's counsel in cross-examining Massey about his statements to the DEA agent was to impeach testimony given by Massey on direct examination suggesting that he had made more, and larger, purchases of cocaine from Griffin and Howard than he had indicated in his statements to the DEA agent.[8]  Griffin argues that because Massey's statements to the DEA agent followed his arrest, they were not made during the course and in furtherance of an existing conspiracy and thus could not be admitted as coconspirator statements under Fed. R. Evid. 801(d)(2)(E).[9]

The record reflects that, on further cross-examination by Howard's counsel, Massey gave testimony that substantially matched his statements contained in the written report – i.e., that he had purchased approximately nine ounces of cocaine on at least fifteen different occasions from Griffin and Howard.[10]  *See Trial Transcript - Proceedings of June*

---

[8]The statements of Massey recorded in the written report did not specify whether the purchases from Griffin and Howard were for powder cocaine or for cocaine base; the generic term "cocaine" was used.

[9]As indicated above, Massey's statements to the DEA agent were introduced at trial by Howard's counsel.  The government did *not* argue that the statements were admissible under Fed. R. Evid. 801(d)(2)(E) or on any other basis and, in fact, objected to their admission at trial.

[10]Massey actually testified that, "to be exact, it was more than that amount."  *Trial Transcript - Vol. 4* at 109.  As was the case with the written report, Massey did not specify during
(continued...)

*15, 1999*, at R. 109-10.   Massey's trial testimony in this regard was *not* hearsay and, consequently, did not need to satisfy the requirements of the "coconspirator statement" rule recognized in Fed. R. Evid. 801(d)(2)(E) in order to be admissible.   Thus, although Massey's out-of-court statements were introduced at trial, the jury also heard Massey's *non-hearsay* testimony, during both direct and cross-examination, about his numerous cocaine purchases from Griffin and Howard.   The references at trial to Massey's out-of-court statements did not, under the circumstances,  meaningfully increase the likelihood that the jury would find that Griffin had participated in a conspiracy to distribute drugs.

Griffin also argues that, because Massey's statements to the DEA agent constituted hearsay, it was improper for the Probation Office – and, in turn, the trial court – to consider the statements in calculating the quantity of cocaine attributable to Griffin for sentencing purposes.   However, as noted above, Massey provided non-hearsay testimony during cross-examination that substantially matched his statements as recorded in the DEA agent's written report.   As also noted, Massey testified on direct examination about making numerous drug buys from Griffin and Howard.   There is no indication in the record that either the probation office, in preparing the Presentence Investigation Report ("PSI"), or the trial court, in imposing Griffin's sentence, relied solely on the statements recorded in

_____

[10](...continued)
cross-examination whether the purchases were of powder cocaine or cocaine base.

the DEA agent's report and failed to consider Massey's trial testimony concerning his cocaine purchases from Griffin and Howard.  Moreover, "[b]oth the Sentencing Guidelines and case law from this circuit permit the district court to consider reliable hearsay evidence at sentencing." *United States v. Query*, 928 F.2d 383, 384 (11th Cir. 1991).  U.S.S.G. § 6A1.3 provides that the court may rely on "relevant hearsay without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy."  Under § 6A1.3, the court can consider any information, so long as the defendant has "the opportunity to rebut the evidence or generally to cast doubt upon its reliability."  *United States v. Castellanos*, 904 F.2d 1490, 1496 (11th Cir. 1990).  Griffin has not established how Massey's statements to the DEA agent concerning his drug purchases – statements made against Massey's own penal interest and corroborated by evidence presented at trial – were unreliable.

For the reasons indicated above, Griffin has not shown that his trial and appellate counsel's failure to challenge the admission of any hearsay statements by Massey "fell below an objective standard of reasonableness" or that counsels' performance in this regard prejudiced his defense.  *See Strickland v. Washington*, 466 U.S. 668, 687-89 (1984).  Thus, Griffin has not established that his counsel rendered ineffective assistance, and he is not entitled to any relief on this claim.

*4.*      ***Failure to Object to Inclusion of Unadjudicated State Disposition in***

***Criminal History Calculation***

Griffin contends that his trial and appellate counsel rendered ineffective assistance by failing to object to the inclusion of an un-adjudicated state disposition in the calculation of his Sentencing Guidelines criminal history. *See Memorandum in Support of § 2255 Motion* (Doc. 2) at 39-48.

Adopting the calculations in the PSI, the trial court assessed Griffin one criminal history point for a 1992 Florida aggravated battery conviction where adjudication was withheld following the jury's verdict and Griffin was placed on three years' probation. The PSI indicated that inclusion of the Florida disposition in the calculation of Griffin's criminal history was proper under U.S.S.G. § 4A1.2(f), which provides, in pertinent part, that "[a] diversionary disposition resulting from a finding or admission of guilt, or a plea of *nolo contendere*, in a judicial proceeding is counted as a sentence under § 4A1.1(c) even if a conviction is not formally entered." Section 4A1.1(c) directs the court, in calculating a defendant's criminal history category, to add one point "for each prior sentence not included in [§ 4A1.1] (a) or (b)."

Griffin argues that the 1992 Florida disposition should not have been included in his criminal history calculation because the state court withheld adjudication of guilt and, further, because he had successfully completed his state probation by the time he committed the instant offense. However, the cases on which Griffin relies in support of this

17

contention are inapposite to the circumstances of his sentence. Those cases – *United States v. Orellanes*, 809 F.2d 1526 (11th Cir. 1987), and *United States v. Gispert*, 864 F.Supp. 1193 (S.D. Fla. 1994) – are concerned with the definition of the term "conviction" for purposes of the provisions of 18 U.S.C. § 922 forbidding the possession of a firearm by a person who has been "convicted" of a felony. At issue in Griffin's case is not the meaning of "conviction" as used in a firearm possession statute, but rather the meaning of "sentence" as used in §§ 4A1.1(c) and 4A1.2(f) of the Sentencing Guidelines. Thus, it is inconsequential that Griffin had successfully completed his state probation before he committed the instant offense, and the state court's withholding of adjudication of guilt does not necessarily address the question whether the Florida disposition should have been included in Griffin's criminal history calculation.

That question is answered by the cases construing U.S.S.G. §§ 4A1.1(c) and 4A1.2(f). The Eleventh Circuit has expressly held that a prior finding or admission of guilt, or plea of *nolo contendere*, in state court – where, as in Griffin's case, the state court withheld adjudication of guilt – is a diversionary disposition under § 4A1.2(f) and is properly counted as a sentence under § 4A1.1(c) for purposes of calculating a defendant's criminal history category. *See United States v. Rockman*, 993 F.2d 811, 813-14 (11th Cir. 1993); *United States v. Tamayo*, 80 F.3d 1514, 1522-23 (11th Cir. 1996). Therefore, Griffin's 1992 Florida disposition was correctly included in the calculation of his criminal history.

For the reasons discussed above, Griffin has failed to establish that his trial and appellate counsel rendered ineffective assistance by failing to object to the inclusion of Florida disposition in the calculation of his criminal history.  Counsel is not ineffective for failing to raise a meritless claim.  *See Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001)); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992).

### 5.     *Failure to Challenge Drug Quantity Attributed for Purposes of Determining Base Offense Level*

Griffin contends that his trial and appellate counsel rendered ineffective assistance by failing to challenge the drug quantity that the trial court attributed to him for purposes of determining his base offense level.  *See Memorandum in Support of § 2255 Motion* (Doc. 2) at 18-21 & 27-31.

To calculate the base offense level for a defendant convicted of drug conspiracy and distribution the court must determine the quantity of illegal drugs attributable to the defendant.  U.S.S.G. § 2D1.1(a)(3) & (c).  Section § 1B1.3 of the Sentencing Guidelines provides that a defendant's base offense level accounts for "all acts and omissions committed, aided, abetted, counseled ... or willfully caused by the defendant," as well as, "in the case of a jointly undertaken criminal activity, ... all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity" that occurred "during the commission of the offense of conviction, in preparation for that offense, or in

the course of attempting to avoid detection or responsibility for that offense."   U.S.S.G. § 1B1.3(a)(1)(A) & (B); see also § 1B1.3(a)(2).   Thus, under the Guidelines, a defendant is responsible for conspiracy activities in which he is involved, and for drugs involved in those activities, and for activities of co-conspirators, and drugs involved in those activities, that are in furtherance of the conspiracy and are reasonably foreseeable to the defendant.   *See United States v. Reese*, 67 F.3d 902, 906-07 (11th Cir. 1995); *United States v. Butler*, 41 F.3d 1435, 1442-43 (11th Cir. 1995).

In sentencing Griffin, the trial court found that a total of 153.6 grams of cocaine base and 215.7 grams of powder cocaine were attributable to Griffin, which converted into the equivalent of 3,115.14 kilograms of marijuana.[11]   *See Sentence Hearing* at 7.   This finding established a base offense level of 34 under § 2D1.1(c)(3) of the Sentencing Guidelines,[12] which carries a sentence range of 151 to 188 months for defendants, like Griffin, with a criminal history category of I.   The trial court sentenced Griffin to the minimum 151 months.

---

[11]Pursuant to U.S.S.G. § 2D1.1, comment. n.10, where a defendant is convicted of selling more than one type of drug, the drug amounts attributable to the defendant are converted into their marijuana equivalencies.   Cocaine base, or "crack," is a solid, rock-like substance, whereas the term "cocaine" generally refers to the powder form, which contains hydrochloric acid.   *See United States v. Williams*, 876 F.2d 1521, 1525 (11th Cir. 1989).   Cocaine base and powder cocaine are treated as different drugs under the Sentencing Guidelines.   Under the Drug Equivalency Tables set out in the Sentencing Guidelines, 1 gram of cocaine base is equivalent to 20 kilograms of marijuana, and 1 gram of cocaine (i.e., powder cocaine) is equivalent to 200 grams of marijuana.

[12]Pursuant to the Drug Quantity Table in U.S.S.G. § 2D1.1(c)(3), the base offense level for offenses involving at least 3,000 kilograms but less than 10,000 kilograms of marijuana is 34.

Griffin asserts that the evidence in his case supported holding him accountable for, at most, the equivalent of 2,292.1 kilograms of marijuana.[13]  He bases this amount on the Eleventh Circuit's opinion vacating the sentence of his co-defendant Patrick Howard.  *See United States v. Howard*, 264 F.3d 1144 (11th Cir. 2001); *United States v. Howard* (unpublished opinion, No. 99-13258).[14]  In that opinion, the Eleventh Circuit held that the record did not support the trial court's calculations attributing the equivalent of 3,515.14 kilograms of marijuana to Howard for purposes of determining his base offense level.  *See id.* at 18.  In so holding, the Eleventh Circuit concluded that the trial court's calculations incorrectly included drug amounts from a second and separate conspiracy for which there was no evidence of Howard and Griffin's involvement.  *Id.* at 9-10 & 16.  That second conspiracy involved co-defendant Robin Conner and other persons apart from Howard and Griffin who supplied cocaine to Calvin Massey.  *Id.* at 9-10.  The Eleventh Circuit specifically found that the testimony presented at trial indicated that Howard and Griffin functioned separately from Conner and that there was no evidence demonstrating that Howard and Griffin knew of Conner or the other suppliers.  *Id.* at 9.  Although the Eleventh

---

[13]Pursuant to the Drug Quantity Table in U.S.S.G. § 2D1.1(c)(4), the base offense level for offenses involving at least 1,000 kilograms but less than 3,000 kilograms of marijuana is 32.  The sentence range for defendants with a criminal history category of I and a base offense level of 32 is from 121 to 151 months.

[14]The Eleventh Circuit affirmed Griffin's convictions in the same opinion.  Griffin did not raise any sentencing issues on appeal.

21

Circuit did not make conclusive findings as to the precise quantity of narcotics properly attributable to Howard, it indicated that the record only supported holding Howard accountable for, at most, the equivalent of 2,292.1 kilograms of marijuana. *Id.* at 17-18. Because that quantity was below the range of 3,000 to 10,000 kilograms of marijuana required for Howard's base offense level of 34, the Eleventh Circuit vacated Howard's sentence and remanded the case for the trial court to make further findings regarding the quantity of drugs within the scope of the criminal activity that Howard had agreed to undertake. *Id.* at 18.

Griffin contends that the trial court incorrectly held him responsible for drug amounts from the second conspiracy in which he and Howard were not involved, as it did in sentencing Howard. He argues that because, like Howard, he was not involved in or aware of the second conspiracy, and because his own involvement in any conspiracy was no greater than Howard's, he could be accountable for, at most, the quantity of drugs that the Eleventh Circuit indicated might be attributed to Howard. That quantity (the equivalent of 2,292.1 kilograms of marijuana) would support a base offense level of 32 and carry a sentence range of 121 to 151 months.

The court agrees with petitioner that it must exclude from consideration any evidence that related solely to the separate conspiracy in which Griffin and Howard were not involved, as the Eleventh Circuit did in Howard's case. However, the court is also

obliged to assess the drug quantities that *are* properly attributable to Griffin.   The district court is charged with making factual findings regarding the amount of drugs that were within the scope of criminal activity that Griffin agreed to undertake. Thus, although it is mindful of the appellate court's conclusion concerning the drug quantity that the record appeared to support in Howard's case, this court has conducted an independent review of the record in assessing Griffin's contention regarding the drug amount attributable to him. The relevant evidence may be summarized as follows.

>           a.        **The Relevant Evidence**

In exchange for leniency, Calvin Massey agreed to cooperate with the government at trial.  The government's evidence indicated that, from sometime between May and July 1998 and continuing until the defendants' arrest on February 4, 1999, Massey made numerous purchases of cocaine[15] from Howard.  *Trial Transcript ("TT") - Vol. 4* at 15-16 & 19-20.   The evidence also established that sometime between September and November 1999 (approximately four months after Howard started regularly selling cocaine to Massey), Griffin also began to participate directly with Howard in the sales of cocaine to Massey.  *TT-Vol. 4* at 21-22.  Testimony revealed that Massey would sell the cocaine he purchased from Howard and Griffin to other dealers, who would then sell to street-level purchasers.

---

[15]The court's discussion of the relevant evidence employs the generic term "cocaine" except where it is clear from testimony that the substance at issue is either powder cocaine or cocaine base.

*See, e.g, TT-Vol. 4* at 51-54; *see also* PSI at para. 38.   There was evidence indicating that Griffin, a resident of Florida, was a source for cocaine that was peddled by Howard and, in turn, by Massey. *See, e.g., TT-Vol. 4* at 20-21, 24-25, & 181.

During the government's case-in-chief, Massey testified that he first purchased a "Big 8" (one eighth of a kilogram) of powder cocaine from Howard at Howard's residence, "probably seven to nine months" before his arrest. *TT-Vol. 4* at 15-16.   According to Massey, for approximately the next two months, he continued to purchase relatively small amounts of cocaine, "like quarter, half ounces," from Howard "[a]bout two to three times a week." *TT-Vol. 4* at 19-20.   Massey explained that when the people to whom he was reselling the drugs then began to demand more from him, he began to purchase larger amounts from Howard. *TT-Vol. 4* at 20.   Massey estimated that during the ensuing three to four months, he purchased "about a Big 8" of cocaine "two to three times a week" from Howard. *Id.*   He stated that the amounts he purchased from Howard then got even larger and that, in addition to making more Big 8 buys during this period, he began to make purchases of half a kilogram, and sometimes a kilogram, of cocaine from Howard. *Id.* According to Massey, this volume of sales continued until he and the other defendants were arrested. *Id.*

Massey testified that he was first introduced to Griffin, through Howard, approximately four months after he began buying cocaine from Howard. *TT-Vol. 4* at 21-22.

Massey stated that during his initial meeting with Griffin, which took place in Howard's car with Howard also present, he told Griffin that he "knew people that needed large quantities of cocaine," and Griffin responded that "he would see what he could do." *TT-Vol. 4* at 22. According to Massey, after his initial meeting with Griffin, when he would phone Howard to arrange a meeting to purchase cocaine, Griffin would arrive with Howard in his car when the sale took place. *TT-Vol. 4* at 22-23.

Massey further testified that on one occasion when he phoned Howard to arrange a drug buy, Howard told him that he was unable to meet with him, but that Griffin would meet with Massey by himself. *TT-Vol. 4* at 22-23. According to Massey, Griffin, alone (without Howard), later met him in a parking lot and sold him an eighth of a kilogram of crack cocaine.[16] *TT-Vol. 4* at 23-24.

---

[16]The relevant portion of the record reflects this exchange:

[Prosecutor]: Tell us about that event and – well let me back up. When was that?

[Massey]: It was sometime in that time frame. Like 4 months after I met Patrick. Uh, we was in the parking lot ... *Just for Feet* [shoe store] parking lot.

[Prosecutor]: Go ahead.

[Massey]: I was telling Patrick was busy so, Howard – well, Griffin came himself.

[Prosecutor]: And what happened there in the parking lot?

[Massey]: We made a transaction.

(continued...)

As noted earlier in this Recommendation (*see* Part II.B.3, above), when questioned

on cross-examination about a statement he made to a DEA agent following his arrest,

---

[16](...continued)
[Prosecutor]:  What did you purchase?

[Massey]:  A Big 8.  Eighth of a key.

[Prosecutor]:  Do you remember, eighth of a key of what?

[Massey]:  Cocaine.

[Prosecutor]:  Was that powder or crack?

[Massey]:  I believe it was crack.

[Prosecutor]:  On that day that you met with Clint Griffin and purchased the eighth of a key of crack cocaine in the *Just for Feet* parking lot, who had you called to arrange that sale?  Or that purchase?

[Massey]:  Howard.

[Prosecutor]:  Did he make any statements to you about the transaction or did you come – upcoming transaction?

[Massey]:  Just to be by myself.

[Prosecutor]:  Did he state who else would be there?

[Massey]:  He told me Griffin would come.

[Prosecutor]:  Did he tell you whether or not he would be there?

[Massey]:  He told me he wouldn't be there.

*TT-Vol. 4* at 23-24.

Massey indicated that he purchased approximately nine ounces of cocaine on at least fifteen different occasions from Griffin and Howard.  However, Massey elaborated upon this testimony by stating, "Well, to be exact, it was more than that amount" and "if you were to add it up, it would come to a lot more than 9 ounces a month ... or 9 ounces a week, 15 times." *TT-Vol. 4* at 109-10.

The government also presented evidence that in the latter part of December 1998, an individual named Damian Jones agreed to become a confidential informant after contacting drug enforcement agents with information about illegal narcotics dealings in and around Montgomery, Alabama.  *TT-Vol. 5* at 27-28.  Jones claimed to have knowledge that Massey was distributing large quantities of cocaine in the Montgomery area and that Massey was obtaining this cocaine from a source in Florida.  *TT-Vol. 5* at 30.

In his capacity as a confidential informant, Jones made a number of controlled purchases of narcotics in the early part of 1999 under the supervision of a DEA agent.  *TT-Vol. 5* at 28-30.  The last of these controlled purchases, and the one relevant to issues raised by Griffin in his motion, took place on February 4, 1999, in the parking lot of the China Express restaurant in Montgomery.  *See, e.g., TT-Vol. 5* at 31.  Earlier that day, Jones had phoned Massey to inquire about buying some cocaine.  *TT-Vol. 4* at 25.  Massey told Jones that he had to wait for a call from his supplier.  *Id.*  According to trial testimony, shortly after this conversation, Massey received a phone call from Patrick Howard

27

informing him that "the cocaine was in." *TT-Vol. 4* at 26.

After receiving the call from Howard, Massey picked up Jones in his car and made a brief stop at a relative's house before coming across Andre Washington, who told Massey that he, too, wanted to buy some drugs – specifically, an eighth of a key (kilogram) of powder cocaine. *TT-Vol. 4* at 26. Shortly thereafter, Massey received a second call from Howard, who told Massey to meet him at the China Express restaurant in order to transact the deal. *TT-Vol. 4* at 28. Massey headed to the restaurant with Jones and Washington in his car. *Id.* On the way, Jones gave Massey $2,000 in cash to pay for the cocaine he wanted to buy.[17] *TT-Vol. 4* at 27. Prior to the arrival of Massey and the others at the restaurant, law enforcement officers initiated surveillance of the restaurant parking lot. *See, e.g., TT-Vol. 5* at 20.

After arriving at the restaurant, Massey went inside with Jones and Washington and waited for Howard to show up. *TT-Vol. 4* at 28. From inside the restaurant, Massey saw Howard and Griffin pull into the parking lot in Griffin's car. *TT-Vol. 4* at 25-29. Massey then exited the restaurant and got into the back seat of Griffin's car. *TT-Vol. 4* at 29. Massey gave Griffin $6,300 in cash at that time, and Howard handed Massey a paper sack, inside of which were two plastic packages containing powder cocaine (one in the amount

_____

[17]Law enforcement officers provided Jones with marked money to buy the drugs. *TT-Vol. 5* at 87-89.

of one eighth of a kilogram, and the other in the amount of one sixteenth of a kilogram) and one plastic package containing two ounces of cocaine base. *TT-Vol. 4* at 29 & 32. Drugs in hand, Massey got out of Griffin's car and proceeded to the rear of his own vehicle, where he placed the package of cocaine base and one of the packages of powder cocaine in the trunk. *TT-Vol. 4* at 34. Massey then went back inside the restaurant and gave Jones and Washington the drugs they had ordered. *Id.*

When Griffin and Howard pulled out of the restaurant parking lot after their transaction with Massey, they were followed by law enforcement officers, who pulled the car over. *TT-Vol. 5* at 20. As the officers approached the car, they observed Griffin attempting to stuff money down his pants. *TT-Vol. 5* at 21. Griffin and Howard were placed under arrest. *Id.* Testimony indicated that officers found a total of $31,250 in cash on Griffin and on the floor and seat of his car. *TT-Vol. 5* at 21 & 33-34

Shortly after his transaction with Griffin and Howard, Massey also left the restaurant with Washington and Jones in his car. *TT-Vol. 4* at 34. When officers who were part of the surveillance team attempted to block the path of his car, Massey rammed a police vehicle and sped off. *TT-Vol. 4* at 34; *TT-Vol. 5* at 9-10. Jones jumped from Massey's moving car as officers pursued the vehicle. *See TT-Vol. 4* at 105; *TT-Vol. 5* at 10. Both Massey and Washington were observed throwing drugs from the car during the chase. *TT-Vol. 4* at 35.

29

Massey eventually stopped and ran to the trunk of his car, where he grabbed a bag and attempted to throw it away. *TT-Vol. 4* at 35. Officers arriving at the scene, however, arrested Massey and Washington and retrieved the bag, which was found to contain separate packages containing 15.3 grams of cocaine base and 61.8 grams of powder cocaine. *See TT-Vol. 3* at 34 & 37; *TT-Vol. 4* at 35. Police later recovered a package containing 112 grams of powder cocaine, which Massey had thrown from his car during the chase. *See TT-Vol. 4* at 35; *TT-Vol. 3* at 38. In addition, police recovered 49.3 grams of cocaine base from Damian Jones, which Jones had received from Massey after his transaction with Griffin and Howard. *See TT-Vol. 4* at 25-27; *TT-Vol. 3* at 34.

The substantive distribution counts charged against Griffin in the indictment (Counts 10 and 11) alleged that he sold cocaine base and powder cocaine on or about February 4, 1999. The conspiracy count of the indictment (Count 1) alleged that the conspiracy commenced at least as early as January 5, 1999, and continued through February 4, 1999.

### b.   Attributable Drug Quantity

As noted above, Griffin's argument regarding the amount of drugs properly attributable to him relies on the Eleventh Circuit's opinion vacating Howard's sentence. In that opinion, the Eleventh Circuit, without indicating specifically whether all of the amounts were both reasonably foreseeable and within the scope of the criminal activity

30

that Howard had agreed to undertake, suggested that, at most, only the following amounts should have been considered in determining the quantity of drugs attributable to Howard:

1.   15.3 grams of cocaine base recovered after Massey's February, 4, 1999, transaction with Howard and Griffin.

2.   61.8 grams of powder cocaine also recovered after Massey's February, 4, 1999, transaction with Howard and Griffin.

3.   49.3 grams of cocaine base that Damian Jones received from Massey after Massey's transaction with Griffin and Howard.

4.   112 grams of powder cocaine thrown from Massey's car during the police pursuit after the February, 4, 1999, transaction.

5.   1000 grams of powder cocaine, an amount the appellate court derived by converting approximately $24,950 in cash found on Griffin and in his car at the time of his arrest into an equivalent drug quantity.[18] Trial testimony indicated that the going rate for a kilogram of powder cocaine was between $21,000 and $25,000.   An additional $6,3000 found on Griffin at the time of his arrest was excluded from consideration by the appellate court because Massey paid that amount of cash to Griffin for drugs purchased on February 4, 1999.

6.   3,827.25 grams of powder cocaine, based on Massey's testimony during cross-examination indicating that he purchased approximately 9 ounces of cocaine on at least 15 different occasions from Howard and Griffin over the 9-month period before the February 4, 1999, transaction.

*See United States v. Howard* (unpublished opinion, No. 99-13258) at 17-18.   Tallying these

---

[18]The conversion of cash proceeds from drug sales into approximate drug quantities may be considered in determining the drug quantity attributable to a defendant for sentencing purposes. *See United States v. Tokars*, 95 F.3d 1520, 1541-42 (11th Cir. 1996).

amounts, the Eleventh Circuit concluded that even if it were to find that the record supported holding Howard accountable for all of the amounts it had listed, the total quantity of drugs attributable to Howard would be, at most, 64.6 grams of cocaine base and 5,001.05 grams of powder cocaine, which converts into the equivalent of 2,292.1 kilograms of marijuana. *Id*. at 18.

However, this court's review of the record to assess Griffin's contention regarding the amount of drugs properly attributable to him has disclosed additional drug amounts not discussed in the Eleventh Circuit's opinion. The court has carefully considered whether or not it is bound, in the instant case, by the total calculated by the Eleventh Circuit in the Howard case. It concludes, with due respect to the appellate court, that it is obligated as the court undertaking the initial review of the record on Griffin's motion to conduct an independent assessment of the quantity of drugs attributable to Griffin, without reliance on the Eleventh Circuit's count in Howard's case.

At Griffin's sentencing hearing, the trial court found that a total of 153.6 grams of cocaine base and 215.7 grams of powder cocaine were attributable to Griffin, which converted into the equivalent of 3,115.14 kilograms of marijuana.[19]   *See Sentence Hearing*

_____

[19]The trial court found that this drug quantity was reasonably foreseeable to Griffin and within the scope of his criminal activity "based on the [court's] examination of the presentence report [and] the evidence presented at trial and the sentence hearing." *Sentence Hearing* at 7

at 7. While this was the same drug quantity that the PSI found to be attributable to Griffin, neither the trial court nor the PSI provided a detailed breakdown of the calculations by which the attributable drug quantity was determined.

When calculating the base offense level for a defendant, a trial court should make individualized findings as to the scope of the defendant's participation in a drug conspiracy and the quantity of drugs reasonably foreseeable to the defendant as a result of that participation. *See United States v. Butler*, 41 F.3d 1435, 1442-43 (11th Cir. 1995); U.S.S.G. § 2D1.1(a)(3). *See also United States v. Mertilus*, 111 F.3d 870, 873 (11th Cir. 1997). However, it is well settled that even if the trial court does not make individualized findings relative to drug quantity and reasonable foreseeability, a defendant's sentence may nevertheless be upheld if the record supports the amount of drugs attributed to the defendant. *See Mertilus*, 111 F.3d at 873; *Butler*, 41 F.3d at 1443.

### c.    Findings of the Court

Based on the trial testimony of Calvin Massey and other government witnesses, this court finds that the following drug amounts involved in, and seized after, the February 4, 1999, transaction are unquestionably attributable to Griffin: (1) 15.3 grams of cocaine base; (2) 49.3 grams of cocaine base; (3) 61.8 grams of powder cocaine; and (4) 112 grams of powder cocaine. Furthermore, the court finds that an additional 125 grams of cocaine base is properly attributed to Griffin, based on Massey's testimony that, around four months

33

after he started buying drugs from Patrick Howard (which would place the date as sometime between September and November of 1998), he purchased a Big 8, or one eighth of a kilogram, of cocaine base from Griffin in a parking lot. Although this sale took place prior to the conspiracy and distribution offenses charged in the indictment, a defendant may be held accountable for drug amounts from transactions occurring before the conspiracy charged in the indictment where such transactions involve the same parties and conduct as the charged conspiracy and are temporally connected to the charged conspiracy. *See United States v. Simpson*, 228 F.3d 1294, 1301-02 (11th Cir. 2000; *United States v. Maxwell*, 34 F.3d 1006, 1011 (11th Cir. 1994). The background note for the Commentary to U.S.S.G. § 1B1.3 states that "[c]onduct that is not formally charged or is not an element of the offense of conviction may enter into the determination of the applicable guideline sentencing range.... [I]n a drug distribution case, quantities and types of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction."[20] Griffin's parking lot sale of the 125 grams of cocaine base to Massey was clearly a part of the same business relationship among Griffin, Howard, and

---

[20]*See also* U.S.S.G. § 2D1.1, comment. n.12 ("Types and quantities of drugs not specified in the count of conviction may be considered in determining the offense level."). That application note also states that "[w]here there is no drug seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled offense."

Massey that culminated with the arrest of the defendants following the transaction of February 4, 1999. That sale of cocaine base was one of numerous and regular drug transactions involving the same parties as charged in the conspiracy, and it was sufficiently connected in time to the conspiracy to allow its inclusion in the calculation of drug amounts attributable to Griffin.

Tallying the amounts described in the preceding paragraph, this court finds that the record supports holding Griffin accountable for at least 189.6 grams of cocaine base and 173.8 grams of powder cocaine. Thus, converting these amounts into their marijuana equivalents, Griffin is accountable for the equivalent of at least 3826.76 kilograms of marijuana. Because this amount exceeds the 3,000-kilogram-of-marijuana threshold required to support Griffin's base offense level of 34, the court deems it unnecessary to make findings with regard to any other drug amounts that could properly be attributed to Griffin.

In view of this court's finding that the record contains evidence sufficient to support Griffin's base offense level of 34, the court further finds that Griffin has failed to establish that his trial and appellate counsel rendered ineffective assistance by failing to challenge the drug quantity that the trial court attributed to him for purposes of determining his base offense level. Consequently, Griffin is not entitled to any relief based on this claim of ineffective assistance of counsel.

## III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the 28 U.S.C. § 2255 motion filed by Griffin be denied, as the claims therein entitle him to no relief.

It is further

ORDERED that the parties shall file any objections to this Recommendation **on or before October 13, 2005.**   A party must specifically identify the findings in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered.   Failure to file written objections to the Magistrate Judge's proposed findings and recommendations shall bar a party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*).

DONE, this 30th day of September, 2005.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE